JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7701 | **DATE** | 8/21/2002 |
| **CASE TITLE** | | Ruddock vs. Briley | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying the petitioner's petition for a writ of habeas corpus under 28 U.S.C. Section 2254. This action is therefore dismissed. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | 2 number of notices | | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 2 2002 | | 29 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | MPJ docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | 8/21/2002 date mailed notice | | |
| | Copy to judge/magistrate judge. | | | | |
| MPJ | courtroom deputy's initials | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

AUG 2 2 2002

UNITED STATES ex rel. **ANDRE** )
**RUDDOCK,** )
)
Petitioner, )
)
v. ) No. 00 C 7701
)
**KENNETH BRILEY,** Warden, )
Stateville Correctional Center )
)
Respondent. )

### MEMORANDUM OPINION AND ORDER

Andre Ruddock was convicted in Illinois state court of the
murder of Octavie King and the attempted murder of Kenyatta Wright,
and sentenced to 55 years of incarceration for murder and 15 years
for attempted murder, the sentences to run concurrently. Having
exhausted his appeals through the state court system, he seeks a
writ of habeas corpus under 28 U.S.C. § 2254. I deny his petition.

I.

The facts of Mr. Ruddock's case, taken from the state court
proceedings, are as follows.[1] On the afternoon of August 19, 1992,
Mr. Ruddock opened fire with a gun on a group of people waiting at
a bus stop at 74th and Aberdeen, Chicago, Illinois. He hit Wright
and King. Wright, wounded twice, managed to escape. Mr. Ruddock

---

[1] I must presume that the factual findings of the state court
are correct unless Mr. Ruddock rebuts them with clear and
convincing evidence. 28 U.S.C. § 2254(e)(1).

followed King onto a gangway and shot him again. King died of six gunshot wounds. Mr. Ruddock was identified by three eyewitnesses: Terrence Sanders (a minor), LaToya Perkins, and Robert Johnson (also a minor). Sanders testified that just before the murder, he was riding with Johnson and others in a car near the bus stop area, when he encountered Mr. Ruddock, Raphael Cole, and some acquaintances. Cole entered the car and announced that he was going to kill King. Mr. Ruddock, standing outside the car, stated that *he*, and not Cole, would kill King. Cole and Mr. Ruddock began to quarrel about who would kill King. Cole then left the car, which drove away. Shortly thereafter, Sanders was walking home on 74th Street, where he saw King, Wright, Perkins, and another girl at the bus stop. Sanders saw Mr. Ruddock walk towards the group with a white shirt over his face, concealing everything but his eyes. The shooter produced a black revolver from under his shirt and fired six shots at the group. Sanders fled, but he saw the shooter for five seconds, and he knew it was Mr. Ruddock because of his shoes and his walk. Perkins, at the time a friend of Mr. Ruddock, also identified him, stating that he had approached with a shirt over his head and fired several shots. She recognized him by his shoes and blue jeans. Johnson saw someone with a shirt over his face walking towards 74th Street. He turned in the opposite direction and heard shots. He testified that he did not know either of the victims.

The state attempted to impeach Johnson with a written statement that he had signed several hours after the crime, and with his grand jury testimony, in which he said that Mr. Ruddock promised Cole that he would shoot King and Wright, and that Mr. Ruddock obtained a pair of pants and a white t-shirt. He put the t-shirt over his face and went to the bus stop.

The police looked for Mr. Ruddock for over a week. At the home of his aunt, where he sometimes stayed, they recovered six .38 caliber bullets of the type that a police firearms expert testified were used in the shooting. Mr. Ruddock was discovered hiding in a closet in an apartment on South Crandon Street in Chicago. The police (officer Gerard Carroll) retrieved a .357 caliber Smith and Wesson handgun from a closet. Perkins testified that Mr. Ruddock had had this gun on the day of the shooting. Mr. Ruddock denied that it was his or that he had ever seen it. The police firearms expert testified that .38 bullets can be fired from a .357 gun.

On appeal, Mr. Ruddock argued that three instances of prosecutorial misconduct deprived him of a fair trial. He argued that the prosecutor: (1) elicited testimony from Officer Carroll falsely implying that Mr. Ruddock told the police where to find the murder weapon; (2) engaged in misconduct during closing argument by stating that Officer Carroll retrieved the gun after asking where "his" gun was; (3) and appealed to the jurors' passion and prejudice by improperly comparing the victims' rights to his own as a

defendant. The appeals court rejected his arguments, and the Illinois Supreme Court declined to grant his petition for review.

Mr. Ruddock then filed a state petition for post-conviction relief with the trial court. He argued that: (1) the prosecution withheld evidence from the defense until trial; (2) the trial court erroneously allowed in gang evidence; (3) Mr. Ruddock was not proved guilty beyond a reasonable doubt because of government reliance on circumstantial evidence; (4) the trial court erroneously allowed the state to impeach its witness Robert Johnson; (5) the trial court erroneously failed to strike expert witness material; (6) the trial court erroneously refused to grant a continuance to investigate evidence withheld from the defense; (7) the trial court erroneously allowed the state to introduce into evidence a weapon not connected to the crimes charged; (8) the trial court erroneously denied him the right to recall a state's witness to perfect impeachment, and to question his own witnesses in a way that would have tended to impeach the state's witnesses; (9) the state violated his due process rights by withholding witness statements; (10) the indictment was obtained on the basis of the testimony of juveniles who were coerced and held incommunicado; (11) the state denied his due process rights by presenting a distorted factual picture and knowingly used misleading proffered testimony that Mr. Ruddock had told police where to recover the weapon that was used as evidence; (12) the trial court erroneously allowed the prosecutor to make

-4-

improper arguments and engaged in prosecutorial misconduct by allowing the jury to see gruesome photos not admitted into evidence; (14) he was denied effective assistance of trial counsel; (15) he was denied affective assistance of appellate counsel; and (16) he is actually innocent. The state trial court and appeals court rejected this petition, and the Illinois Supreme Court denied his petition for leave to appeal on December 1, 1999. His state court remedies having been procedurally exhausted, Mr. Ruddock filed in federal court for a petition for a writ of habeas corpus under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. The petition raises the same arguments raised in Mr. Ruddock's state petition for post-conviction relief.

## II.

Several of Mr. Ruddock's claims involve attacks on evidentiary rulings presented as due process claims, in particular, claims (2), (4),(5) and (7). On a federal petition for writ of habeas corpus, I "will not review evidentiary questions unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990). Consequently, Mr. Ruddock must show that the evidentiary errors were "of such magnitude that [they] took on a constitutional dimension." *Howard v. O'Sullivan,* 185 F.3d 721, 723 (7th Cir. 1999). With regard to (2) and (4)—apparently the same claim—the state

court allowed evidence that Mr. Ruddock was in the same gang as Johnson to explain his change of testimony and impeach his testimony at trial. The state has the power "to apply evidentiary rules which serve the interests of fairness and reliability." *Stomner*, 903 F.2d at 1129 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Impeachment serves this purpose. The challenged evidentiary ruling was not a denial of fundamental fairness.

Mr. Ruddock's claim (5) is that the trial court abused its discretion by not striking expert witness testimony by the medical examiner, Dr. An, a pathologist, concerning the place and distance from which one shot was fired. Mr. Ruddock says that Dr. An was not qualified to testify about forensics. Even if the medical examiner knew nothing about forensics, which Mr. Ruddock has not shown (he testified he is board certified in pathology and forensic pathology), there is nothing that Mr. Ruddock identifies in the challenged testimony, as quoted by Mr. Ruddock, that would suggest a denial of fundamental fairness in allowing the testimony. Whether Dr. An was a forensic expert was only a state evidentiary issue. In his reply, Mr. Ruddock specifically objects that the prosecution elicited speculative testimony from Dr. An suggesting that one of the victims was shot in the back while lying face down on the ground, which was inconsistent with the testimony of LaToya Perkins that she witnessed the shooter fire his final shot at the victim while the victim was attempting to climb a fence. Even if Dr. An

was totally unqualified to testify on any forensic matters — which has not been shown -- Mr. Ruddock's case was not prejudiced to the point of a due process violation by this testimony. He claims that the purportedly speculative testimony tended to "inflame the emotions of the jury," but the jury would not likely be more outraged by the shooter shooting a victim in the back who was lying down as opposed to one who was climbing a fence while fleeing for his life. Therefore, even if Mr. Ruddock was right that Dr. An's testimony was incorrectly admitted, this would be the sort of error of state law in an evidentiary ruling that is not cognizable on habeas review.

Mr. Ruddock complains further (claim (7)) that the trial court improperly allowed in the evidence of the gun that Mr. Ruddock says was not connected with the murder. Here Mr. Ruddock complains that the evidence was merely that the gun was found in the place where he was and that there was evidence that it was a gun of the type that might have been used in the murders, but there was no fingerprint or ballistic evidence tying it to him or to the crime. However, the sort of evidence he says was lacking is not required, and the evidence that was presented is more than enough to establish the admissibility of the gun as relevant. It was not fundamentally unfair to admit the gun into evidence.

In addition, there are several other noncognizable claims. Claim (8) is an evidentiary claim presented as a confrontation

-7-

clause issue. LaToya Perkins identified Mr. Ruddock as the shooter on the basis of his clothing, and testified that Mr. Ruddock had threatened her on the phone. That would have been extremely prejudicial if unchallenged. But Mr. Ruddock was able to impeach this testimony. Another witness, Francesca Silas, who was on the line at the time, was allowed to testify that she had heard no threats or talk about the crimes, but she was not initially allowed to testify about what she heard, which was conversation of a sexual nature. The content of this conversation, however, was later admitted as evidence. Even if it had never been admitted (Mr. Ruddock says that Silas was not allowed to testify as to the content of the conversation, but it is unclear whether he means ever or initially), Mr. Ruddock was still able to impeach Perkins.

Mr. Ruddock here argues that the trial court erroneously denied him the right to recall Perkins to perfect impeachment. In the first place this is not a confrontation clause issue. The Confrontation Clause of the Sixth Amendment guarantees the accused the right "to be confronted with the witnesses against him." "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Mr. Ruddock was able to subject Perkins to impeachment, and indeed, ultimately, to get in Silas' testimony as to the content of the conversation.

I can find no Supreme Court case nor (if it were relevant, which, as explained below, it is not) any appellate cases finding that there is any constitutional right under the Confrontation Clause or any other provision of the Constitution to perfect impeachment of a witness whom one has already impeached and whom one has subjected to cross examination. Mr. Ruddock's complaint, if any, is with the evidentiary ruling, and I cannot review it here.

Mr. Ruddock's claim (6) is that the trial court erroneously refused to grant a continuance to investigate evidence that Mr. Ruddock says was withheld from the defense. This evidence concerned the fact that Sanders, a witness against Mr. Ruddock, was at the time of Mr. Ruddock's trial incarcerated in Michigan on charges of attempted murder and carrying a concealed weapon, facts that only came out on cross-examination. Mr. Ruddock argues only that the denial of the continuance impeded his planning for his defense. That is not a denial of fundamental fairness. Mr. Ruddock, moreover, was able to bring out the fact of Sanders' incarceration for its impeachment value. The decision to grant or deny a continuance here was a purely a matter of state law, and I cannot review it.

Finally, Mr. Ruddock argues that he is actually innocent. The Supreme Court has expressly held that it comports with the Constitution to imprison a person who may be actually innocent, as long as there are no violations of the Constitution, at least if there is some state avenue to pursue for a truly persuasive claim

-9-

of actual innocence. *Herrera v. Collins,* 506 U.S. 390, 416 (1993). If there is such an avenue-and the Supreme Court mentions executive clemency (available in Illinois) as an example-—actual innocence can be a basis for habeas relief "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. We have never held that [it is available in] freestanding claims of actual innocence." *Id.* at 404. Mr. Ruddock's is such a claim.

In addition, Mr. Ruddock offers no persuasive evidence of actual innocence. His evidence is an affidavit of an alibi witness, Danielle Simpson, who states that she was watching TV with him at her house at the time of the murder. He offers no plausible explanation as to why he did not offer this evidence at trial. He does say that he had lost track of her, but he does not say that he asked the trial judge for a continuance to find her. Moreover, had he done so, a rational jury might well have disbelieved it in the face of the other evidence against him.

## III.

A state prisoner like Mr. Ruddock may obtain federal habeas review of his claims only if he has exhausted his state remedies and avoided procedurally defaulting his claim. 28 U.S.C. § 2254(b) & (c); *Schaff v. Snyder*, 190 F.3d 513, 524 (7th Cir. 1999). In general, I cannot review on petition for writ of habeas corpus questions of federal law that have not been properly presented to

-10-

the state court. Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). Mr. Ruddock's claim (12), that the trial court improperly allowed the prosecution to make inflammatory comparisons of his rights with the victims and used unfairly prejudicial gruesome photos, was held to be procedurally defaulted by the state court on independent and adequate state courts, and its decision in this regard is normally nonreviewable in a habeas petition.

If a state court did not reach a federal issue "because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice." *Willis v. Aiken*, 8 F.3d 556, 560 (7th Cir. 1992). The state court here held that Mr. Ruddock had admittedly waived the objections at issue here by failing to raise a specific objection to the comments in his post-trial motions. *People v. Ruddock*, No. 96-2923, at 7 (Ill. App. Ct. Dec. 30, 1997). Moreover, the court held that as a matter of Illinois law, under the Illinois procedural rules, Ill. S.Ct. R. 615(a), the trial court's ruling was not plain error. *Ruddock*, No. 92-2923, at 8. "When, under this contemporaneous rule, the state court declines to review an issue not properly preserved, the state court decision rests upon a state law ground

-11-

that is both 'independent of the federal question and adequate to support the judgment.'" *Willis,* 8 F.3d at 560 (citation omitted).

For a state procedural ground to bar review, "the state court actually must have relied upon the procedural bar as an independent basis for its disposition of the case." *Id.* at 561. I conclude that Mr. Ruddock's procedural default on this claim rested upon independent and adequate state grounds. See *Coleman v. Thompson,* 501 U.S. 722, 730-32 (1991); *Patrasso v. Nelson,* 121 F.3d 297, 301 (7th Cir. 1997) ("'Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court.'").

Moreover, Mr. Ruddock cannot demonstrate that this procedural default is excused by a showing of cause and prejudice, or that failure to review would result in a fundamental miscarriage of justice. *Howard v. O'Sullivan,* 185 F.3d 721, 726 (7th Cir. 1999). "Cause" means that the omission was not his fault. "Prejudice" means that it would have mattered, that the outcome would have been changed had the error not been made. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). Although Mr. Ruddock does argue that he received ineffective assistance of counsel, which may be cause to set aside a procedural default, *Coleman,* 501 U.S. at

753-54, he does not argue that his counsel was ineffective in failing to make the arguments in question; he does not argue prejudice, and, as explained, although he claims to be actually innocent, he fails to raise a constitutional claim attached to his claim of actual innocence. Therefore his procedural default cannot be excused.

IV.

A.

Under AEDPA, I may not grant Mr. Ruddock's petition with respect to any matter that the state courts have adjudicated on the merits unless its determinations were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). With regard to the law governing § 2254(d)(1), "contrary to" established Supreme Court precedent means "'substantially different from the relevant precedent.'" *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001), *e.g.*, "applying a rule that contradicts the governing law . . . [or making] a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). With regard to the law governing 28 U.S.C. § 2254(d)(2), I may not gainsay a state court's

-13-

factual determinations unless Mr. Ruddock shows that they were wrong
by clear and convincing evidence. *Id.* § 2254(e)(1).

B.

1.

Mr. Ruddock's claim (1) is that the prosecution violated his
due process rights by withholding evidence from the defense until
trial, in particular by failing to disclose the fact of Sanders'
incarceration (see the discussion of claim (5) in section II above).
Presumably Mr. Ruddock means to invoke *Brady v. Maryland*, 373 U.S.
83, 87 (1963) (requirement to disclose exculpatory evidence); *Giglio
v. United States*, 405 U.S. 150, 154-55 (1972) (impeachment evidence
material for *Brady* purposes). *Brady* and *Giglio* disclosures are only
required if material, i.e., if the outcome would have been
different. *United States v. Bagley,* 473 U.S. 667, 682 (1985).
Moreover, Under *Brady*, the government must disclose exculpatory
information, but it need not always do so before trial. *United
States v. Zambrana*, 841 F.2d 1320, 1340 (7th Cir. 1988). Evidence
disclosed during trial meets the *Brady* requirements "as long as the
ultimate disclosure is made before it is too late for the defendant
to make any use of the benefits of the evidence." *Id.; United States
v. Allain*, 671 F.2d 248, 255 (7th Cir. 1982).

Here the issue is whether Sanders could have been so
effectively impeached by information about deals or inducements
offered for his testimony in the form of leniency that the result

-14-

of the trial would have been different. Even were the defense not informed of Sanders' incarceration beforehand—the government says that it was—the information was not material, and *Brady* was satisfied. The fact came out at trial; the defense was able to cross-examine the witness as to the existence of deals, and there was plenty of independent evidence of Mr. Ruddock's guilt even if (as has not been shown) Sanders' testimony would have been totally discredited.

2.

Mr. Ruddock's claim (3) is that he was proved guilty beyond a reasonable doubt because the government's case was based on weak circumstantial evidence. He disputes the reliability of Perkins' and Sanders' identifications, notes that Perkins' veracity was partly impeached by Silas, and raises other questions about the strength of the evidence. Essentially, he asks me to reweigh the evidence, and hold that the jury came to the wrong result. On a challenge to the sufficiency of the evidence, I "consider the evidence presented in the light most favorable to the government, and draw all reasonable inferences in its favor." *United States v. Burrell,* 963 F.2d 976, 993 (7th Cir. 1992). On habeas review I accord state court findings considerable, even abject, deference. § 2254(e)(1). This is not a case where the government failed to present evidence. Mr. Ruddock was faced with evidence that he disputed for and won from Cole the right to commit the murder and attempted murder; there were

-15-

three eyewitness identifications, and there was fact of his flight and presence in a room with a gun of a sort used in the crime. That was many times more than enough evidence to convict. A jury might have accepted Mr. Ruddock's arguments, but this one did not. It was not irrational of the jury to have so decided, and Mr. Ruddock has not come forward with clear and convincing evidence to the contrary.

4.

Claim (10) is that Mr. Ruddock's due process rights were violated because his indictment was based on the testimony of juveniles who were coerced and held incommunicado. An indictment "must meet general Fourteenth Amendment standards." *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991). No matter how a state chooses to charge a criminal defendant, "the due process clause requires that a criminal defendant receive 'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.'" *Id.* (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)). That is, "a criminal defendant must receive adequate notice of the charges against him so that he may defend himself." *Id.*

Mr. Ruddock does not argue that the indictment against him was so vague or poorly framed that it failed to provide adequate notice of the charges against him. He knew that he was charged with murder and attempted murder, and he does not dispute that the indictment informed him of the elements of these crimes. Rather, he argues that it was not supported with reliable evidence, or was based on

-16-

evidence that was gathered in an illegal manner. However, an indictment is not evidence, see *Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir. 1995), and it is doubtful "whether an attack on evidence presented or representations made to the grand jury can ever overturn a conviction." *United States v. Roth,* 777 F.2d 1200, 1203 (7th Cir. 1985). A conviction cannot be overturned by showing that the indictment is founded on "inadequate or incompetent evidence," *United States v. Calandra*, 414 U.S. 338, 345 (1974), or even "evidence procured in violation of the defendant's constitutional rights." *Roth,* 777 F.2d at 1203. If so, it cannot be that an indictment valid on its face can be attacked by showing that it was based on evidenced procured by violation of *someone else's* constitutional rights, which, in any event, Mr. Ruddock has no standing to press: a party must ordinarily assert only his own rights. *See American Nat. Bank & Trust Co. of Chicago v. Weyerhaeuser Co.,* 692 F.2d 455, 459 (7th Cir. 1982).

5.

Claim (9) is that the prosecutor wrongfully withheld inculpatory witness statements, in particular, that LaToya Perkins had told prosecution that she identified Mr. Ruddock by his clothing, a statement that he says was not contained in the police reports or Perkins' grand jury testimony. However, while *Brady* requires that exculpatory statements be disclosed, there is no requirement that the government disclose *inculpatory* evidence.

-17-

*United States v. Polland*, 994 F.2d 1262, 1267 (7th Cir. 1993) (*Brady* does not require disclosure of evidence that is "more inculpatory than exculpatory.").

6.

Claim (11) asserts that two instances of prosecutorial misconduct deprived Mr. Ruddock of a fair trial. The issue concerns whether there was an improper implication that the gun recovered from the closet in room where Mr. Ruddock was found hiding was his. Mr. Ruddock objects to the the following bit of cross examination:

> The State: What happened Next?
> Officer Carroll: I asked [petitioner] where his gun was at, sir.
> The State: After that conversation, did you go anywhere?
> Officer Carroll: Yes sir, I retrieved his gun from the living room closet. (Tr. S-121, Oct. 19, 1994; vol. 8)

In closing, the state argued that Officer Carroll had retrieved the gun from the closet after asking petitioner where "his" gun was, and Mr. Ruddock objects to that as well.

The state appellate court found no error in the first exchange, finding that Officer Carroll did not provide "the substance of [petitioner's] response to his question concerning the gun, and further did not irreparably link the [petitioner] to the weapon." *Ruddock*, No. 96-2923, at 6. The appellate court noted that Mr. Ruddock's counsel brought out on cross-examination that Mr. Ruddock had not said that it was "his gun," and that the trial court had sustained the objection to the words "his gun" in the direct testimony. It found that the prosecutor's reference to "his" gun in

-18-

closing was improper but that the abuse had been cured by an instruction that closing arguments are not evidence, and that in any event Mr. Ruddock had not been prejudiced. *Id.*

Insofar as he challenges the constitutionality of the state court's determinations, Mr. Ruddock must show that its determinations were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." *Boss,* 263 F.3d at 739. "For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Id.* On the other hand, a state court decision "that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" involves "an unreasonable application of clearly established federal law." *Id.* Mr. Ruddock fails to identify any particular Supreme Court case the holding of which is inconsistent with the state court determination, or which the state court determination unreasonably wrongly applies. Although Mr. Ruddock's pro se petition and response are well-written, able and thoughtful, I understand

-19-

that both his facilities for and his training in legal research are limited, but my own research does not turn up any such case either.

7.

Mr. Ruddock's claim (14) is that he was denied effective assistance of trial counsel because (1) his lawyer failed to attempt to quash the indictment as being based on the testimony of minors (Terrence Sanders, then 12, and Robert Johnson, then 16) who had been coerced and held incommunicado, (2) his lawyer failed to call a key witness who, Mr. Ruddock says, would have testified that he owned the .357 revolver found in the apartment where Mr. Ruddock was apprehended, and another witness who would have offered testimony impeaching Saunders' testimony.

For ineffective assistance of counsel, defendant's counsel's performance must have fallen below "an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Counsel's performance is presumed to fall within the wide range of reasonable professional judgment. *Id.* at 689. To overcome this presumption, Mr. Ruddock must demonstrate that his trial counsel's performance was deficient and that his counsel's deficiencies prejudiced his defense. *Id.* at 701.

As explained, the arguments about the minors which Mr. Ruddock advances would not have sufficed as a basis for quashing the indictment. Either they are evidentiary arguments, and an indictment

-20-

is a charging instrument and not itself evidence, or they are attempts to assert the rights of third parties. "It is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson*, 272 F.3d 878, 898 n.8 (7th Cir. 2001). The indictment is merely supposed to inform the defendant of the charges against him. As long as it is not made up from whole cloth, informed by blatant and obvious perjury known by the state to be such, or simply lacking any evidentiary support at all, it cannot be attacked as long as it is valid on its face. *Cole*, 333 U.S. at 201; *Calandra*, 414 U.S. at 345; *Roth,* 777 F.2d at 1203. Mr. Ruddock's indictment was not thus defective.

As to Mr. Ruddock's argument about his trial counsel's failure to call Parish Mackmore, who would have testified that he owned the gun, this is a classic strategic decision, and therefore does "not constitute ineffective assistance of counsel." *Chichakly v. United States*, 926 F.2d 624, 628 (7th Cir. 1991). A jury might have believed that Mackmore owned the gun, but that Mr. Ruddock used it to commit the crime. The ownership of the gun was either irrelevant, or of insufficient evidentiary weight to make any difference. Mr. Ruddock's trial counsel's decision not to call Vondale Sullivan, whom he says would have testified that the key conversation in the car with Sanders never happened, was also strategic. Even if Sullivan had been called, and testified credibly, successfully impeaching Sanders, there were still the eyewitness identifications

-21-

by Johnson and Perkins, which was enough for a rational jury to convict.

8.

Finally, claim (15) is that Mr. Ruddock received ineffective assistance of appellate counsel because his appellate counsel failed to raise the issues presented on direct appeal in a constitutional context, failed to raise numerous issues of constitutional magnitude, and failed to send the record to petitioner.

Mr. Ruddock's appellate counsel did in fact frame his three arguments in constitutional terms, including the two instances of prosecutorial misconduct discussed under claim (11) above. See Brief and Argument for Defendant-Appellant in *Ruddock*, No. 96-2923, Ex. A, at 12 (referring to U.S. Const. amends. VI and XIV). The third, involving various prosecutorial misconduct in closing arguments, was procedurally defaulted, but Mr. Ruddock does not argue that this was ineffective assistance of counsel. Mr. Ruddock then contends that his appellate counsel failed to raise a number of important constitutional issues. However, Mr. Ruddock does not identify any winning arguments that his appellate counsel failed to raise. All of the ones he himself presents are inadequate. Had any one of them been successful, it might have been ineffective assistance of counsel to fail to raise it, but it was not ineffective assistance to fail to raise a losing argument. The argument that Mr. Ruddock's appellate counsel failed to send him the record is also

unsuccessful, because, however derelict it was for counsel not to have done that, Mr. Ruddock does not indicate anything that suggests that if he had had the record, his appeal would have been successful. He would have had to have raised different arguments than the ones raised here, which were raised when he did have the record.

V.

Mr. Ruddock's petition for habeas relief is therefore DENIED.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:      August 2/ , 2002